```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

 3               HONORABLE OTIS D. WRIGHT, II

 4            UNITED STATES DISTRICT JUDGE PRESIDING

 5


 6   UNITED STATES OF AMERICA,      )
                                    )
 7              Plaintiff,          )
                                    )
 8         vs.                      )   CR 09-00805-ODW-2
                                    )
 9   ISAAC ZIMERMAN,                )
                                    )
10              Defendant.          )
     _____)

11

12

13
                      REPORTER'S TRANSCRIPT OF
14                          SENTENCING
                   THURSDAY, FEBRUARY 16, 2016
15                         11:09 A.M.
                     LOS ANGELES, CALIFORNIA
16

17

18

19

20

21

22   _____

23          DEBI READ, CSR 3949 CRR RMR RDR
          FEDERAL OFFICIAL COURT REPORTER
24          312 NORTH SPRING STREET 432A
          LOS ANGELES, CALIFORNIA 90012
25             READIT3949@GMAIL.COM
```

1                      A P P E A R A N C E S

2

ON BEHALF OF THE PLAINTIFF:

3

        EILEEN M. DECKER
4       UNITED STATES ATTORNEY
        BY:  DIANA M. KWOK
5            Assistant United States Attorney
        United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       213-894-6529
        diana.kwok@usdoj.gov
8

ON BEHALF OF THE DEFENDANT:

9

        LAW OFFICES OF MARK J. WERKSMAN
10      BY:  MARK J. WERKSMAN
             Attorney at law
11      888 West Sixth Street, Suite 400
        Los Angeles, California 90017
12      213-688-0460
        mwerksman@werksmanlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          LOS ANGELES, CALIFORNIA; THURSDAY, FEBRUARY 16, 2016

 2                         11:09 A.M.

 3                           -o0o-

 4          (Call to Order of the Court.)

 5          THE COURTROOM DEPUTY:  Calling Item 2, CR 09-805,

 6   United States of America versus Isaac Zimerman.

 7       Counsel, may I have your appearances, please.

 8          MS. KWOK:  Good morning, your Honor.

 9       Diana Kwok for the United States.

10          THE COURT:  Ms. Kwok, good morning.

11          MR. WERKSMAN:  Good morning, your Honor.

12       Mark Werksman appearing on behalf of Mr. Zimerman, who's

13   present in court.

14          THE COURT:  Mr. Werksman, good to see you again,

15   sir.

16       And good morning, Mr. Zimerman.

17          THE DEFENDANT:  Good morning, your Honor.

18          THE COURT:  All right, sir.  We're here for your

19   sentencing.  Mr. Zimerman, have you seen the Presentence

20   Investigation Report prepared by U.S. Probation?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  This was disclosed to the

23   parties on January the 4th, and then there's been an addendum

24   to that Presentence Report.  Have you seen that one as well,

25   sir?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  The Court has read and

3    considered both, as well as the sentencing position papers

4    filed by both the defense and the government which we will talk

5    about momentarily.

6          On November 10th -- Marine Corps birthday -- 2015,

7    Mr. Zimerman entered a plea of guilty to Count 12 of the Second

8    Superseding Indictment, which charged a violation of Title 18

9    United States Code Section 554, smuggling fish from the United

10   States.

11         Based upon U.S. Sentencing Guidelines Section 2Q2.1, this

12   carries a base offense level of 6.  To that, a 2-level

13   enhancement has been added because the offense was committed

14   for pecuniary gain, and this is pursuant to Guidelines

15   Section 2Q2.1(b)(1)(A).

16         And there's been a second 2-level enhancement due to

17   obstruction of justice, that is the absconding from the

18   jurisdiction of the United States.  And this is pursuant to

19   Section 3C1 -- 3C.1.

20         And from that is a 2-level reduction for his final

21   acceptance of responsibility pursuant to Section 3E1.1, leaving

22   us with a final adjusted offense level of 8.

23         Based upon zero criminal history points, he falls within

24   Criminal History Category I.  This then suggests a Guidelines

25   range of 0 to 6 months.

1          All right.  Just to that point in terms of performing our

2     obligation to calculate the Guidelines range, any disagreement

3     with how that Guidelines range has been calculated?

4          Ms. Kwok?

5               MS. KWOK:  No, your Honor.

6               THE COURT:  Mr. Werksman?

7               MR. WERKSMAN:  No, your Honor.

8               THE COURT:  Okay.  Hmm.  Okay.  I was looking for

9     Probation's recommendation, but I can't seem to put my hands on

10    it.

11         Okay.  Ah, thank you, dear.

12         All right.  Probation has recommended a sentence at the

13    upper end of that range or six months.

14         The government has requested a 2-level upward variance to

15    level 10, and a sentence at the upper end of that range which

16    would be 6 to 12 months.  So the government is seeking a

17    sentence of 12 months, 3 years' supervised release, and a

18    special assessment of $100.

19         The defense is requesting a sentence of time served, no

20    supervision to follow or probation.  In other words, no

21    sentence.  Okay.

22         For no real reason, Ms. Kwok, let me hear from the

23    government first.

24               MS. KWOK:  Your Honor, I believe that all our points

25    have been addressed in the papers.

```
 1              THE COURT:  Okay.

 2              MS. KWOK:  That is, that this gentleman -- this

 3    defendant has a history of dealing with fish.  He knows that he

 4    was doing it illegally.  There seems to have been a knowledge,

 5    an intent element that ran throughout his acts.  And the fact

 6    that he fled to Mexico was his choice, your Honor, not the

 7    government's.

 8              THE COURT:  Okay.  Mr. Werksman.

 9              MR. WERKSMAN:  Good morning, your Honor.

10        Thank you for allowing me to address the Court.  I won't

11    reiterate what's in our pleadings because we have filed all of

12    the arguments that we need to make.

13              THE COURT:  How do I -- how do I deal with the fact

14    that even while he's on, you know, pretrial release, he

15    continues to engage in the same prohibited conduct?

16              MR. WERKSMAN:  Is your Honor speaking of the time

17    frame back in 2010 when he -- after he'd been indicted in the

18    first case?

19              THE COURT:  Uh-huh.

20              MR. WERKSMAN:  Well, your Honor, that's what the

21    government alleges.  It -- there's never been an a

22    adjudication --

23              THE COURT:  Okay.

24              MR. WERKSMAN:  -- or a trial on those cases.

25              THE COURT:  I understand you.  Thank you.
```

```
 1            MR. WERKSMAN:  Your Honor, let me ask -- first, I
 2   want to introduce to the Court there are six members of
 3   Mr. Zimerman's family seated here in the second row:  his
 4   brother and sister, his wife Leonor -- his wife Leonor, his
 5   son, Eitan, and his close family friends Odie and -- there's
 6   Eitan's fiancée, Jennifer.
 7       Some of these people have written letters to the Court.
 8   You have eight letters in our sentencing filing which speak of
 9   Mr. Zimerman as a man who is -- they call him generous, kind,
10   trustworthy.  He's described as a great family man.
11            THE COURT:  Uh-huh.
12            MR. WERKSMAN:  He's called a class act.  He sits
13   here before you today, your Honor, at the age of 66 with no
14   prior criminal record but for this offense.
15            THE COURT:  Uh-huh.
16            MR. WERKSMAN:  I submit, your Honor, it's not an
17   accident that a man would make it to the age of 61 without ever
18   being accused of a crime.  It's because he is a good, decent,
19   law-abiding man, raised a beautiful family and worked hard all
20   of his life.  He's an immigrant and he was realizing and
21   enjoying the American dream.
22       What he did, your Honor, he has plead guilty to the
23   offense in Count 12 of selling two arapaima gigas,
24   a-r-a-i-p-a-m -- the court reporter's nodding; she knows
25   arapaima gigas.  This is a fish, your Honor, which is not an
```

1   endangered species.  It happens to be on a list.

2        Now, your Honor, what I'm about to say is not meant at all

3   to belittle or trivialize the law which we must all follow, but

4   there are some crimes, your Honor, as you know, that are malum

5   per se, acts of evil, acts of violence.  This is not one.

6        There are other crimes that are malum prohibitum.  They're

7   illegal 'cause the government says it's illegal.  And for this

8   particular offense to be illegal, your Honor, it's not obvious

9   that it's illegal to sell two arapaima gigas without a proper

10  re-export certification.  In order to determine that it's

11  illegal, you have to go through thousands of papers of federal

12  regulations, cross-reference and cross-index them -- I'm sorry,

13  your Honor -- cross-reference and cross-index them to charts

14  and tables, and somewhere on Appendix II in a chart somewhere

15  buried within thousands of pages of federal regulations is a

16  reference that makes the sale of two arapaima gigas illegal.

17       Now, look, your Honor, he shouldn't have done it.  He did

18  it.  He plead guilty to it.  For this crime, he has now spent

19  254 days in custody, plus 5 days when he was initially arrested

20  on the first indictment back in March of 2009.  He spent 5 days

21  in custody when he was originally arrested -- I'm sorry.  That

22  was in August of 2009.  Then he was facing this case and, your

23  Honor, he made the horrible, stupid decision to leave.  He

24  shouldn't have.  He did.  And then he got arrested on the

25  warrant and spent 7-and-a-half months in the Reclusorio

Oriente, one of the worst hellholes of a prison anywhere in the

world.  It's -- it's discussed by Amnesty International as

being one of the worst detention centers in the world, built

for 2,000 inmates, housing 6,000 inmates.

He slept crouched on top of a toilet bowl because there

was no room on the floor amidst a mass of bodies.

I'm sorry.  There were 40,000 inmates there instead of the

2,000 for which it was built.

After spending 7-and-a-half months in the Reclusorio

Oriente, he was extradited back to the United States and spent

7 weeks in the Metropolitan Detention Center.

Then this Court gambled on releasing him on a bond on

November 10th, and he's been on house arrest for the past

three months, literally three months and a few days, and I'm

happy to report there have been no allegations of violation of

his pretrial release conditions.  He has scrupulously adhered

to the terms and conditions of his pretrial release.

And so now, your Honor, we're facing a sentencing where

the Probation Office evaluated the Guidelines that apply, the

Guidelines that are in the plea agreement, and even the

enhancement of obstruction of justice which Congress in its

wisdom and the Sentencing Commission in there judgment

determined should apply comes out to 0 to 6 months.  But the

government comes in and they want to double that to 6 to

12 months and they want the high end of that.

1    Now, look, I know the prosecutors are doing their job and

2    they're trying to resolve this case, and I don't doubt the

3    sincerity of their view, but I would ask the Court to consider

4    that the government's position, while it is permissible under

5    the plea agreement to seek an adjustment, it's violative of the

6    spirit of the agreement and the spirit of his extradition.

7    Mexico carefully reviewed the entire indictment and they

8    looked at the facts.  They had their reasons.  I'm not saying

9    that they adjudicated it -- his case -- as it would have been

10   in a jury trial here in the United States, but in the wisdom of

11   the Republic of Mexico, he was only to be subject to

12   extradition on two counts.

13   And so he gets here on those two counts and the government

14   says, Well, you should consider all the other stuff and the

15   other fish sales, and basically doubled his sentence.

16   Well, again, your Honor, I don't quarrel with the

17   government's technical ability under the plea agreement or the

18   law to ask for an enhancement or a variance, but it is

19   violative of the spirit of his extradition and, your Honor,

20   it's extraordinary.  I mean, the Guidelines specifically

21   account for flight.  It's a 2-level upward adjustment for

22   obstruction of justice.  They applied it.  He's still at 0-6.

23   Now, your Honor, as I said, his crimes, they were wrong.

24   He shouldn't have done it.  But again, these are offenses very

25   technical in nature.  And by the way, this arapaima gigas, I

1    looked it up on Google.  It's kind of like a garbage fish in

2    the Amazon.  We're not talking about unicorns.  We're not

3    talking about bald eagles.  This is basically a 16-inch long

4    garbage fish in the Amazon that's not endangered.  It just

5    happens to fall on a chart within an appendix within an exhibit

6    buried deep within the federal regulations.

7         Isaac Zimerman is not a healthy man, your Honor.  We

8    discussed this at length during the bail hearing.  And the

9    Court, I know -- I know that factored into the Court's decision

10   to let him out.  He's diabetic.  He's got atrial fibrillation.

11   He has an irregular heartbeat.  He suffers hypertension.  I'd

12   be hypertensed, too, if I spent seven-and-a-half months in the

13   Reclusorio Oriente.  And more recently he's contracted shingles

14   which is a painful chronic condition for which he's constantly

15   seeking medical attention to this day.

16        Your Honor, this man has been punished and, yes, some of

17   the punishment was his own doing.  Because he was in Mexico, he

18   ended up spending seven-and-a-half months in the Reclusorio

19   Oriente, but he did time.

20        I would ask, your Honor -- and by the way, I don't want to

21   make light of the proceedings by being perceived as asking for

22   no punishment.  We're asking for a sentence with the

23   Guidelines, a sentence that would basically recognize that he

24   served 254 plus 5 -- 259 days in custody; a sentence that would

25   allow him -- pursuant to the plea agreement, the government is

1  not going to object to a provision that he be allowed to return

2  to Mexico and to the state of Israel upon his release.  He has

3  a business in Mexico that he needs to attend to.

4      But look, your Honor, he's at your mercy.  He will

5  scrupulously adhere to whatever terms and conditions your Honor

6  sets.  I know that he's proven that now.  All I ask, your

7  Honor, is you allow him to leave through the same door that he

8  entered with a sentence that this Court believes is fair, and I

9  would ask that it be a compassionate sentence as well as a fair

10  sentence and allow him to prove to you that he can do this

11  right.  He can obey the Court, he can obey the law, and he can

12  continue to be a good citizen.  He always has been, except for

13  this -- this -- this legal battle he had with the government,

14  this crime of the importation and illegal exportation of fish.

15      I'll submit it, your Honor.

16          THE COURT:  Mr. Zimerman, you also have a right

17  under the law to address the Court on the issue of your

18  sentence.

19          MR. WERKSMAN:  Your Honor, my client wanted me to

20  point out that he's written a book.  It's in Spanish --

21          THE COURT:  I'm not reading a book.

22          MR. WERKSMAN:  Your Honor, when it's eventually

23  published and it's in English, I may provide the Court a

24  courtesy copy.  I'll provide it to the government as well.

25      But he's written a book about his travails, and this is

1   something that's deeply affected him, this legal case, this --

2   this situation he's placed himself in.  He takes -- he's very

3   remorseful and he spilled out his grief and the heartache he

4   suffered in the book.

5            THE COURT:  Is all this to say that he doesn't wish

6   to make a statement?

7            MR. WERKSMAN:  No.  He will.  He'll address your

8   Honor now.

9            THE COURT:  This was just a commercial.

10           MR. WERKSMAN:  Well --

11           THE COURT:  Sit down, Mr. Werksman, please.

12           MR. WERKSMAN:  By the way, his letter is Exhibit I

13  to our sentencing, so you have a letter from him, your Honor.

14           THE COURT:  Yes, sir.  Go ahead sir.

15           THE DEFENDANT:  Yes, your Honor.  I am very sorry

16  for what I have done and I am grateful that you released me

17  from jail.  I beg to allow me to remain free and I will prove

18  to you that you made the right choice to let me go.  I will not

19  dishonor your court.  Thank you.

20           THE COURT:  All right.  Thank you, sir.

21           MS. KWOK:  Your Honor?

22           THE COURT:  Yes, ma'am.

23           MS. KWOK:  Sorry.  But just to clarify something

24  that Mr. Werksman had mentioned.  The government is not seeking

25  a sentence based on any of the charges on which he was not

1   extradited in this particular case.  Rather, the government is

2   just asking for a comprehensive analysis of the 3553 factors in

3   this case and believes that those 3553 factors merit a sentence

4   of 12 months.

5         THE COURT:  But his position is is that those

6   factors have already been taken into account with the

7   enhancement for absconding.

8         MS. KWOK:  Your Honor, I guess if you are looking

9   specifically at his flight to Mexico, then, yes, the Sentencing

10  Guidelines provide for an adjustment based on his flight to

11  Mexico.

12      However, we're also looking at his -- his characteristics,

13  his history as a person, what we've learned as we've looked

14  into him, and his sophistication.

15        THE COURT:  Uh-huh.  Okay.  All right.  Thank you.

16      Equal time, Mr. Werksman.  Last -- last remarks?

17        MR. WERKSMAN:  I'll submit, your Honor.  Thank you.

18        THE COURT:  All right.  Thank you.

19      Having considered -- well, first of all, the government's

20  request for a 2-level variance is granted.

21      Having considered now the sentencing factors enumerated at

22  18 U.S.C. Section 3553(a), including the new advisory

23  Guidelines range of 6 to 12 months based upon an offense level

24  of 10 and a Criminal History Category of I, it is ordered that

25  the defendant shall pay to the United States a special

assessment of $100, which is due immediately.  Any unpaid
balance shall be due during the period of imprisonment at the
rate of not less than $25 per quarter and pursuant to the
Bureau of Prisons' Inmate Financial Responsibility Program.

Pursuant to Guidelines Section 5E1.2(a), all fines are
waived as the Court finds that the defendant has established an
inability to pay a fine.

Pursuant to the Sentencing Reform Act of 1984, it is the
judgment of the Court that defendant, Isaac Zimerman, is hereby
committed on Count 12 of the 13-count Second Superseding
Indictment to the custody of the Bureau of Prisons for a term
of 12 months.  Upon release from imprisonment, defendant shall
be placed on supervised release for a term of one year under
the following terms and conditions:

1.  Defendant shall comply with the rules and regulations
of the U.S. Probation Office and General Order 05-02.

2.  During the period of community supervision, defendant
shall pay the special assessment in accordance with this
judgment's orders pertaining to such payment.

3.  Defendant shall not engage as whole or partial owner,
employee, or otherwise in any business involving the sale of
exotic fish without the express approval of the Probation
Officer prior to engaging in such employment.

Further, defendant shall provide the Probation Officer
with access to any and all business records, client lists, and

other records pertaining to the operation of any business owned in whole or in part by the defendant as directed by the Probation Officer.  And,

4.  Defendant shall provide -- or cooperate in the collection of a DNA sample from himself.

The drug testing condition mandated by statute is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

Pursuant to 18 U.S.C. Section 3553(a), the Court is obligated to impose a sentence sufficient but not greater than necessary to comply with the purposes of 3553(a)(2).  In determining the particular sentence to be imposed, the Court is required to and indeed has considered the nature and circumstances of the offense, the history and characteristics of the defendant.

The Court has recognized the need for the sentence imposed to reflect the seriousness of the offense, that it should promote respect for the law and provide just punishment for the offense.  It should afford adequate deterrence to future criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment in the most effective manner.

The Court has considered the various kinds of sentences available, the Guidelines sentencing range, and the various policy statements issued by the United States Sentencing

1    Commission.

2          This 66-year-old defendant appears for sentencing

3    following his guilty plea to smuggling fish from the United

4    States.  Specifically, on April 21st of 2008, Mr. Zimerman

5    exported two arapaima gigas from Los Angeles to Canada and at

6    that time Mr. Zimerman did not have a CITES, C-I-T-E-S,

7    re-export permit that would allow him to lawfully export these

8    two fish to Canada.  Accordingly, he knowingly smuggled these

9    fish from the United States.

10         He was arrested in 2009 for this conduct as well as other

11   illegal fish sales in connection with his wholesale fish

12   business, River Wonders LLC.

13         While on pretrial supervision, he engaged in similar

14   conduct when he attempted to export six arapaima gigas from

15   Los Angeles to the Bahamas on March 4, 2010.  Although this

16   sale was not completed and the conduct was not part of the

17   count of conviction, it is considered relevant conduct and has

18   been taken into consideration when determining the advisory

19   guidelines range.

20         Mr. Zimerman is one of three children born to his parents.

21   He was raised in Mexico City where his father worked at a meat

22   processing factory.  He attended private Jewish high school for

23   the poor before leaving for Israel to attend college.  Though

24   having studied multiple topics, he left college without a

25   degree.

1    He also suffers from significant health problems, all of

2  which appear to be adequately controlled with medication.  He

3  does not suffer from any mental health issues or substance

4  abuse issues.

5    Sir, you have the right to appeal your conviction if you

6  believe that your guilty plea was somehow unlawful or

7  involuntary, or if there was some other fundamental defect in

8  the proceedings that was not waived by your guilty plea.

9    You also have the right to appeal your sentence under some

10  circumstances, particularly if you believe your sentence is

11  contrary to the law.

12    However, a defendant may waive some of those rights as

13  part of a plea agreement, and you have entered into a plea

14  agreement that waives some or all of your right to appeal the

15  sentence itself.

16    Now, such waivers are generally enforceable.  If you

17  believe your waiver is unenforceable, you may present that

18  theory to the Court of Appeals.  With few exceptions, a notice

19  of appeal must be filed within 14 days of judgment being

20  entered.

21    Do you understand that, sir?

22    THE DEFENDANT:  Yes.  Yes, your Honor.

23    THE COURT:  If you are unable to afford a transcript

24  of the record in this case, one will be provided at government

25  expense.

1        If you are unable to pay the cost of an appeal or the

2   filing fee, you may apply within 14 days for a waiver.

3        If you do not have an attorney to act on your behalf and

4   if you request it, the Clerk of the Court will prepare and file

5   a notice of appeal on your behalf.  Again, you must make the

6   request within 14 days.  The notice of appeal must designate

7   the judgment or order appealed from and the fact that you are

8   appealing to the Court of Appeals.  It should also designate

9   that portion of the proceedings not already on file that you

10  deem necessary for the reporter to include.

11       Also in its consideration, the Court has evaluated the

12  Sentencing Guidelines as required by Title 18 United States

13  Code Section 3553(a)(4), and finds the calculations of

14  suggested sentence therein for this defendant under the present

15  circumstances to be reasonable.  The Court, therefore,

16  sentences the defendant as previously stated.

17       Anything further from the government?

18       MS. KWOK:  Your Honor, the government moves to

19  dismiss the remaining counts in the Second Superseding

20  Indictment in the interest of justice.

21       THE COURT:  All right.  On the motion of the

22  government and in the interest of justice, the remaining counts

23  are dismissed.

24       Mr. Werksman.

25       MR. WERKSMAN:  Your Honor, would the Court consider

1    making the sentence 12 months and 1 day so he could be afforded

2    custody credits on the sentence?

3              THE COURT:  Yes.  The sentence will be 12 months and

4    1 day.

5              MR. WERKSMAN:  And your Honor, because the Guideline

6    range allows alternative sentencing, would the Court consider

7    imposing the remaining sentence in community confinement or --

8              THE COURT:  No.

9              MR. WERKSMAN:  -- or in house arrest?

10             THE COURT:  No.

11             MR. WERKSMAN:  Your Honor, would the Court also

12   order the Bureau of Prisons to give him credit -- I think

13   legally he's entitled to -- but it would help if the Court

14   would order that the Bureau of Prisons give him credit for the

15   time he served while in Mexican custody awaiting time in this

16   matter for this indictment.

17             THE COURT:  Will I order it?  No.

18             MR. WERKSMAN:  Finally, your Honor, would the Court

19   order that while he's on supervised release, that he be

20   permitted to travel to Mexico and the state of Israel?  This is

21   something the government will not oppose per our plea

22   agreement.

23             THE COURT:  While he's on supervised release, that's

24   fine.  Right.

25             MR. WERKSMAN:  And finally, your Honor, may he have

1    a brief period of time in which to surrender?

2            THE COURT:  No.  He's going into custody forthwith.

3            MR. WERKSMAN:  Your Honor, because of his health and

4    the fact that we weren't necessarily expecting him to go into

5    custody right now, would your Honor allow him maybe ten days?

6            THE COURT:  Is there something unclear about what I

7    just said?

8            MR. WERKSMAN:  Not at all, your Honor.

9            THE COURTROOM DEPUTY:  This Court is in recess.

10        The bond is exonerated.

11            (Proceedings concluded at 11:36 A.M.)

1       CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5    I, DEBRA READ, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND

6    FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

7    OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

8    TITLE 28, UNITED STATES CODE, THAT THE FOREGOING IS A TRUE AND

9    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

10   HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE

11   FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

12   CONFERENCE OF THE UNITED STATES.

13

14       DATED THIS 25TH DAY OF FEBRUARY, 2016._____

15

16

17       /S/ DEBRA READ
         _____
18       DEBRA READ, CSR NO. 3949 CRR RMR RDR
         FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT